## 12076.  PLANTERS NUT AND CHOCOLATE COMPANY *v.* HAGAN GROCERY COMPANY.

Paragraphs 1, 2, 4, 8, 9, 10, 11, 12, and 13 of the amendment to the petition were improperly stricken on demurrer thereto, touching their relevancy to the measure of damages for failure to deliver to the plaintiff, "f. o. b. Donalsonville, Ga.," two carloads of peanuts alleged to have been purchased from the defendant by the plaintiff for use in the manufacture of peanut butter and confectionery at Suffolk, Virginia, which manufactured products, it was alleged, the plaintiff contracted to sell at prices based upon the price at which the defendant had contracted to furnish the peanuts and which was lower than the market price that the plaintiff afterwards had to pay to others in order to obtain peanuts to manufacture its products and carry out its contracts for the sale of such products.

DECIDED DECEMBER 13, 1921.

Action on contract; from city court of Bainbridge — Judge Spooner.   December 23, 1920.

The action was for damages in the sum $1,000 on account of failure to deliver to the plaintiff two carloads of "best stock white Spanish peanuts in good sacks f. o. b. Donalsonville, Ga.," which it was alleged had been bought from the defendant on November 30, 1917, at 6-¼ cents per pound, and had never been delivered, the petition alleging that "the usual and ordinary car of peanuts is 36,000 pounds." The petition was amended as follows:

"1. The plaintiffs, Planters Nut & Chocolate Company, are manufacturers of confectionery and peanut butter, and are engaged in the manufacture of confectionery and peanut butter at Suffolk, Virginia, and one of the raw products used by the plaintiffs in the manufacture of such confectionery and peanut butter is white Spanish peanuts. The plaintiffs are buyers of peanuts for the purpose of using the same in the manufacture of confectionery and peanut butter; and the plaintiffs are constantly buying peanuts from day to day based on their ability to sell their finished product.

"2. The selling prices of plaintiffs' finished products are based on and regulated by the cost price of the raw material used in the manufacture of such products; and the selling prices are fixed in advance of the manufacture of the finished products, based on the prices of raw material bought or contracted for.

"3. At the time of the purchase of the two carloads of peanuts by the plaintiff from the defendant, the plaintiff could have purchased peanuts of equal grades at the same price plaintiff agreed to pay defendant, from other persons or dealers; but after said purchase from defendant, peanuts continued to advance in price, and plaintiffs were unable to purchase peanuts at the same price as they agreed to pay defendant.

"4. Plaintiff relied on the purchase of said two carloads of peanuts from the defendant, believing that said peanuts had been shipped by the defendant as represented; and based prices for manufactured and finished products on the fact of the purchase of said nuts at and for the price agreed upon.

"5. Not receiving said peanuts, but believing that they had been shipped to plaintiff as represented by the defendant, plaintiffs, on the 15th and 17th of December, 1917, wrote defendant, requesting information as to shipment so that same could be traced.

" 6. Not receiving any information to the contrary, plaintiffs continued to believe that said peanuts had been shipped, as represented by the defendant, until the 5th day of January, 1918, on which date plaintiff received a letter from the defendant, dated December 27th, 1917, in which letter defendant stated: ' We regret very much that we are going to have to fall down on delivering these goods.'

" 7. But the defendant never finally refused to deliver to plaintiffs the said two carloads of peanuts until the latter part of January, 1918, by a letter dated January 24th, 1918, which letter the plaintiffs received about the 26th or 27th of January, 1918; and the plaintiffs continued and had continued up to that time to demand delivery of said peanuts; and expected the said peanuts to be delivered to plaintiffs until ·the receipt of said letter finally refusing to make delivery.

" 8. The plaintiffs bought said two carloads of peanuts from the defendant at 6.25 per pound, f. .o. b. Donalsonville, Georgia, and the freight rate from Donalsonville, Georgia, to Suffolk, Virginia, was 51 cents per hundred pounds, making the cost of said peanuts delivered to plaintiffs at Suffolk, Virginia, 6.76 cents per pound.

" 9. On December 27, 1917, the market price of well-cleaned white Spanish peanuts, sacked at Suffolk, Virginia, was 7 to 7-½ cents per pound, and on January 5th, 1918, the market price of well cleaned, sacked, white Spanish peanuts at Suffolk, Virginia, was 7-¼ to 7-½ ·cents per pound, and were the same price at Donalsonville, Georgia, less freight.

" 10. Peanuts continued to advance during the month of January, 1918, and on January 24th, 1918, and on the date that plaintiff received defendant's letter finally refusing to make delivery the market price of well-cleaned, sacked, white Spanish peanuts, at Suffolk, Virginia, was 7-¾ to 8 cents per pound, and were the same price at Donalsonville, Georgia, less freight.

" 11. That during the month of December, 1917, and January, 1918, the market price of white Spanish peanuts, sacked, f. o. b. South Georgia points, was as follows: 6.25, 6.35, 6.45, 6.50, 6.75, 7, 7.25, and 7.50 cents per pound, and said prices were the same at Donalsonville, Georgia, on said dates.

" 12. That after defendant finally refused to make delivery

of said peanuts, the plaintiffs, in order to carry out their manu-facturing contracts and in order to manufacture their products, had to buy peanuts, to replace the peanuts which the defendant sold to the plaintiff and refused to deliver, at 7-½ cents per pound, f. o. b. south Georgia points; and at Donalsonville, Georgia, and the plaintiffs had to sell their finished products at a price based on the price which the plaintiffs had agreed to pay the defendants for the two carloads of peanuts which the defendant sold to plaintiff and refused to deliver.

" 13. All to the injury and damage of the plaintiffs."

On demurrer, certain paragraphs of the amendment were stricken by the court. The grounds of demurrer sustained were: To paragraph 1, that the allegations are irrelevant and imma-terial. To paragraph 2, that the allegation as to the cost or value of the finished products is immaterial and irrelevant. To paragraph 4, that the allegations are immaterial and irrelevant. To paragraph 8, and especially the allegation as to the freight rate, that the allegations are immaterial and irrelevant, " the measure of damages, if any, being the difference in the value of the peanuts at the point of delivery, Donalsonville, Ga., at the time of the delivery, and the market value is to be controlled by the prices paid at Donalsonville, Ga., at the time and place of sale and delivery, and not at Suffolk, Va., or elsewhere." To paragraphs 9, 10, 11, 12, and 13, " as irrelevant and imma-terial, and not being the proper way in which to ascertain the damages sustained by plaintiff, if damages were sustained, the legal damages, if damages were sustained, being the difference be-tween the contract price and the market price on the date of the sale and place of delivery and the point where delivery was to be made, which was at Donalsonville, Ga., and not elsewhere."

The trial resulted in a verdict for the defendant; and, the plaintiff's motion for a new trial having been overruled, the case came to this court on exceptions to that judgment, as well as to the above-stated rulings on the demurrer.

*J. C. Hale,* for plaintiff.

*John R. Wilson, H. C. Harrison,* for defendant.

BLOODWORTH, J. Of this case Broyles, C. J., says: " I think the court erred in striking paragraphs 1, 2, 4, 8, 9, 10, 11, 12, and 13 of the amendment to the petition, as all of them

45

were material and relevant and illustrative of the plaintiff's case. This error rendered the further proceedings in the case nugatory." In this opinion Luke, J., fully concurs. While I cannot agree that all of the paragraphs referred to were improperly stricken, upon a consideration of the entire record I do consent to a reversal of the judgment.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*